Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
David Henretty, OSB No. 031870
dhenretty@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR 97204
(503) 473-8324

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CARLOS CASTELLÓN,<br><br>          Plaintiff,<br><br>   v.<br><br>ASHWANI KUMAR, in his individual capacity and KUMAR, INC., an Oregon corporation,<br><br>          Defendants. | Case No.  6:21-cv-01418-<br><br>**COMPLAINT**<br><br>Fair Labor Standards Act (29 U.S.C. §§ 206 & 207), Oregon Minimum Wage Law (O.R.S. § 653.025, Oregon Overtime Law (O.R.S. § 653.261), Breach of Contract, Oregon Penalty Wage for Failure to Pay Wages on Termination (O.R.S. § 652.150)<br><br>**JURY TRIAL DEMANDED** |

///

///

///

COMPLAINT - 1

## I.    INTRODUCTION

1.      From November 2018 to September 2020, Plaintiff Carlos Castellón was employed by Defendants Kumar, Inc. ("Days Inn") and Ashwani Kumar ("Defendant Kumar"). Defendant Kumar, the owner of the Days Inn and numerous other nearby hotels in Bend, Oregon, hired Mr. Castellón and was his direct supervisor.

2.      Defendant Kumar required Mr. Castellón to work an average of 80 hours per week. But Defendant Kumar compensated Mr. Castellón for only a fraction of his time, neglecting to pay thousands of hours in regular and overtime pay. Although Defendant Kumar gave Mr. Castellón the title of manager, he paid Mr. Castellón barely more than minimum wage, compensated Mr. Castellón for fewer than half the hours he actually worked, and assigned Mr. Castellón extensive non-managerial duties.

3.      Mr. Castellón's hours and duties varied from week to week because Defendant Kumar treated Mr. Castellón as an "on call" subordinate to carry out the daily business activities of his understaffed hotel. Defendant Kumar required Mr. Castellón to staff the front desk during the day and overnight, run errands over the weekend, and clean rooms when housekeepers quit. Mr. Castellón completed administrative tasks, but he was never far from Defendant Kumar's hands-on supervision. Defendant Kumar routinely overruled Mr. Castellón's scheduling and personnel decisions, limiting any discretion or autonomy actually exercised by Mr. Castellón.

4.      Plaintiff seeks compensation for unpaid overtime and liquidated damages under the Fair Labor Standards Act and Oregon minimum wage and overtime laws, for unpaid wages under Oregon contract law, and for penalty wages under Oregon law.

///

///

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over Plaintiff's claim for federal minimum wage and overtime pursuant to 28 U.S.C. § 1331 because that claim arises under the federal Fair Labor Standards Act.

6.    This court has supplemental jurisdiction over Plaintiff's Oregon state law claims pursuant to 28 U.S.C. § 1367 because all claims asserted in this action are part of the same case or controversy.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in the district.

## III.    PARTIES

8.    Plaintiff Carlos Castellón is a resident of Bend, Oregon.

9.    Defendant Kumar, Inc. ("Days Inn") is an Oregon corporation with its principal place of business in Bend, Oregon.

10.    Defendant Ashwani Kumar ("Defendant Kumar") is a resident of Bend, Oregon, and the owner of Days Inn.

## IV.    FACTUAL ALLEGATIONS

11.    From November 2018 to September 2020, Plaintiff Castellón was employed by Days Inn in Bend, Oregon. He worked under the direct supervision and control of the owner, Defendant Kumar.

12.    Defendant Kumar hired Mr. Castellón as a manager. Defendant Kumar did not provide an hourly wage when he hired Mr. Castellón.

13.    Pay stubs reflect that, at first, Defendant Kumar paid Mr. Castellón $11.50 per hour. Mr. Castellón was shocked to see his first pay stub and learn that he was being paid such a

low hourly wage for a managerial role. He complained, and Defendant Kumar assured him he would be converting his wage to an annual salary.

14.     After two weeks of employment, the pay record shows that Defendant changed Mr. Castellón's pay to $13.00 per hour for the subsequent four weeks, followed by six weeks at $14.00 per hour. Beginning in June 2019, the hourly rate in the pay stubs increased to $15.00. The hourly rate remained at $15.00 for the rest of Mr. Castellón's employment at Days Inn.

15.     For most of his employment, Mr. Castellón lived on-site in one of the hotel rooms. There was no written agreement specifying that rent would be part of Mr. Castellón's compensation, and his pay stubs do not document any deductions for housing costs.

16.     Over the course of his employment, Mr. Castellón worked an average of 80 hours per week. He always worked Monday through Friday, and typically worked Saturdays and Sundays as well. In addition, he had to cover the night shift whenever the night clerk position was vacant—which it was about one third of the time—adding, on average, 18 more hours per week.

17.     Mr. Castellón did not have lunch breaks or rest breaks. He did not have sick days, either. On the few occasions that Mr. Castellón could not work due to illness, he was not paid.

18.     Mr. Castellón took one vacation during his employment: a trip to Mexico immediately following a weeklong training for Days Inn managers in San Diego. Defendant Kumar approved the trip on the condition that Mr. Castellón take his work computer with him and work during the trip, including a requirement that he be available by phone. Mr. Castellón worked many hours each day during this "vacation."

19.     Defendants paid Mr. Castellón twice per month, with one paycheck covering hours worked between the 1st and 15th days of the month, and a second paycheck covering hours worked between the 16th day and last days of the month.

20.     Defendants paid Mr. Castellón for about half the hours he actually worked. Pay stubs reflect compensation for between 78 and 110 hours per 15- or 16-day pay period. In fact, Mr. Castellón worked an average of approximately 177 hours per pay period.

21.     At first, Mr. Castellón recorded all the hours he worked on his timesheets. About six weeks after he started work, however, Defendant Kumar directed Mr. Castellón to start recording 80 hours of work per pay period on his timesheet, regardless of the hours he actually worked. As a result, the majority (nearly 90%) of Mr. Castellón's paychecks from February 2019 and later reflect exactly 80 hours of compensation.

22.     After February 2019, Mr. Castellón sometimes attempted to document more than 80 hours on his timesheets. It was Defendant Kumar's usual practice to review and approve timesheets before paychecks were issued to employees. If Defendant Kumar noticed that Mr. Castellón listed more than 80 hours per pay period, Defendant Kumar would reject the additional hours so that Mr. Castellón would only be paid for 80 hours.

23.     Between February 2019 and September 2020, Mr. Castellón was paid for more than 80 hours per pay period six times. For those six pay periods, some of which occurred during trips Defendant Kumar took to India, Defendant Kumar either did not review the timesheets or did not notice that Mr. Castellón had documented more than 80 hours of work.

24.     Even when Mr. Castellón listed more than 80 hours on his timesheets, he still documented fewer hours than he actually worked. He believed if he were to document his true work hours, Defendant Kumar would be more likely to notice and reject the additional hours.

25.    On several occasions, Mr. Castellón asked to be paid for the many extra hours he worked. Defendant Kumar responded that he could not pay because he didn't have the money.

26.    From November 2018 to July 2019, Defendants paid Mr. Castellón between $552 and $1,800 per pay period ($418.60 to $787.50 per week).

27.    From August 2019 to September 2020, Defendants paid Mr. Castellón $1,200 per pay period ($525 or $560 per week, depending on whether the pay period contained 15 or 16 days).

28.    Despite his designation as manager, Mr. Castellón spent most (roughly 70%) of his work hours on non-administrative tasks. He was routinely required to staff the front desk during both the day shift and overnight. During overnight shifts, Mr. Castellón wheeled a rollaway bed into the back office to sleep when he wasn't greeting patrons or answering the phone.

29.    Defendant often ordered Mr. Castellón to shop at Costco, Home Depot, or Cash & Carry for hotel supplies, such as bleach, toilet paper, or breakfast food.

30.    Defendant Kumar required Mr. Castellón to clean rooms when housekeeping staff called out, quit, or were laid off, which frequently happened. In particular, Mr. Castellón performed substantial housekeeping duties after Defendant Kumar directed him to cut the hours of housekeepers during the COVID-19 pandemic.

31.    Mr. Castellón's non-managerial duties were so overwhelming that he struggled to find time to complete administrative tasks like scheduling and overseeing disputes between or discipline of employees. On multiple occasions, he asked Defendant Kumar to allow him to hire a clerk to staff the front desk during the day so he would have time to perform these administrative duties. Defendant Kumar denied these requests.

32.     During the roughly 30% of the time when Mr. Castellón performed administrative activities, he was given limited autonomy and discretion. For example, although Mr. Castellón generally had discretion to making hiring decisions, Defendant Kumar would closely monitor new hires, including using the hotel's security cameras. He often would require Mr. Castellón to fire employees when Mr. Castellón believed there was no reason to do so.

33.     Defendant would revoke Mr. Castellón's authority to make personnel decisions. For example, on one occasion, Mr. Castellón and the lead housekeeper had a disagreement about a personnel change. Defendant intervened and sided with the housekeeper, despite having told Mr. Castellón that these decisions were part of his duties.

34.     Defendant Kumar routinely overrode other administrative decisions, too. For example, near the end of Mr. Castellón's employment, a guest drowned in the hotel swimming pool. Mr. Castellón and other hotel staff attempted to resuscitate the guest, but they were not successful. Mr. Castellón proposed that the hotel pay for counseling for the staff who had attempted to save the guest, but Defendant Kumar rejected that proposal.

35.     In September 2020, Defendant laid off Mr. Castellón, citing dissatisfaction with his performance. He gave Mr. Castellón 24 hours to move out of his hotel room.

## V.     FIRST CLAIM FOR RELIEF

### Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act, 29 U.S.C. § 206

36.     Mr. Castellón incorporates the allegations set forth above.

37.     In at least one week, Defendants failed to pay Plaintiff wages computed at a rate equal to or greater than $7.25 an hour, the federal minimum wage.

38.     Defendants violated Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, when they failed to pay Plaintiff the federal minimum wage for all hours worked.

39.     As a result of this FLSA violation, Mr. Castellón suffered estimated economic damages of $2,355.20. He is entitled to payment of that amount plus an equal amount in liquidated damages. 29 U.S.C. § 216(b).

40.     Pursuant to 29 U.S.C. § 216(b), Mr. Castellón seeks reasonable attorney fees and costs.

## VI.     SECOND CLAIM FOR RELIEF

**Failure to Pay Overtime in Violation of the Fair Labor Standards Act,
29 U.S.C. § 207**

41.     Mr. Castellón incorporates the allegations set forth above.

42.     During the course of his employment, Plaintiff worked in excess of forty (40) hours in at least one work week.

43.     Defendants violated Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, when they failed to pay Plaintiff overtime wages for work performed in excess of forty hours per work week.

44.     Defendants failed to pay Mr. Castellón for an estimated 3,464 overtime hours. As a result of this FLSA violation, Mr. Castellón suffered estimated economic damages of $12,812.94. He is entitled to payment of that amount plus an equal amount in liquidated damages. 29 U.S.C. § 216(b).

45.     Pursuant to 29 U.S.C. § 216(b), Mr. Castellón seeks reasonable attorney fees and costs.

///

///

///

///

## VII.    THIRD CLAIM FOR RELIEF

### Failure to Pay Minimum Wage in Violation of Oregon Minimum Wage Law, O.R.S. § 653.025

46.    Defendants failed to pay Mr. Castellón at the Oregon minimum hourly rate for hours worked, in violation of O.R.S. § 653.025(2)(b).

47.    The minimum wage in Deschutes County was $10.75 per hour from November 2018 to June 2019. During that period of time, Mr. Castellón worked approximately 2,076 hours, entitling him to minimum wages totaling $22,317.00, but Defendants paid him only $18,407.75.

48.    The minimum wage in Deschutes County $11.25 per hour from July 2019 to June 2020. During that period of time, Mr. Castellón worked approximately 4,183 hours, entitling him to minimum wages totaling $47,058.75, but Defendants paid him only $29,782.50.

49.    The minimum wage in Deschutes County was $12.00 per hour from June to September 2020. During that period of time, Mr. Castellón worked approximately 823 hours, entitling him to minimum wages totaling $9,876.00, but Defendants paid him only $6,000.00.

50.    Plaintiff is entitled, under O.R.S. § 653.055(1)(a), to recover the unpaid wages in the estimated amount of $25,061.50.

51.    Pursuant to O.R.S. §§ 652.150 and 653.055(1)(b), Defendants are liable to Plaintiff for $3,600.00 in penalty wages.

52.    Pursuant to O.R.S. § 653.055(4), Plaintiff seeks reasonable attorney fees.

## VIII.    FOURTH CLAIM FOR RELIEF

### Failure to Pay Overtime in Violation of Oregon Overtime Law, O.R.S. § 653.261

53.    Mr. Castellón incorporates the allegations set forth above.

54.     By failing to pay Mr. Castellón time and a half for his overtime work, Defendants violated O.R.S. § 653.261 and its implementing regulations, which require overtime pay for work performed in excess of forty hours per week.

55.     Defendants failed to pay Mr. Castellón for approximately 3,189.2 overtime hours. As a result of this violation of state overtime law, Mr. Castellón suffered estimated economic damages of $23,594.80.

56.     Pursuant to O.R.S. § 653.055, Mr. Castellón seeks reasonable attorney fees and costs.

## IX.     FIFTH CLAIM FOR RELIEF

### Breach of Contract

57.     Mr. Castellón incorporates the allegations set forth above.

58.     Defendants breached their contract with Plaintiff by failing to pay all wages as agreed.

59.     From November 16, 2018, to December 15, 2018, Defendants agreed to pay Plaintiff $11.50 per hour for all hours worked, with time and a half for overtime as required by Oregon law. Plaintiff worked 126 hours during this time and was paid in full.

60.     From December 16, 2018, to February 28, 2019, Defendants agreed to pay Plaintiff $13.00 per hour for all hours worked, with time and a half for overtime as required by Oregon law. Plaintiff worked 428.7 hours during this time and was paid in full.

61.     From March 1, 2019, to May 31, 2019, Defendants agreed to pay Plaintiff $14.00 per hour for all hours worked, with time and a half for overtime as required by Oregon law. Plaintiff worked approximately 525.8 hours during this time and is entitled to be paid $18,403. He only received $7,546.

62.    From May 16, 2019, to September 10, 2020, Defendants agreed to pay Plaintiff $15.00 per hour for all hours worked, with time and a half for overtime as required by Oregon law. Plaintiff worked approximately 2,703.2 hours during this time and is entitled to be paid $100,085.25. He only received $38,347.50.

63.    Defendants failed to pay Mr. Castellón for approximately 3,482.5 hours of work, including an estimated 3,189.2 overtime hours. Applying his contractual hourly wage, he is due $73,969.50.

## X.    SIXTH CLAIM FOR RELIEF

### Penalty for Failure to Pay Wages Upon Termination, O.R.S. § 652.150

64.    Mr. Castellón incorporates the allegations set forth above.

65.    Mr. Castellón's employment with Days Inn ended in September 2020.

66.    Defendants failed to pay Mr. Castellón all wages due upon termination, as required by O.R.S. § 652.140.

67.    On July 6, 2021, Mr. Castellón sent Defendants a written demand for payment. Defendant's lawyer acknowledged receipt of this demand on July 15, 2021.

68.    Defendants have not paid Mr. Castellón the demanded compensation. As a result, Defendants are liable for $3,600.00 in penalty wages under O.R.S. § 652.150.

69.    Pursuant to O.R.S. § 652.200(2), Mr. Castellón seeks reasonable attorney fees and costs.

### DEMAND FOR JURY TRIAL

70.    Plaintiff demands a jury trial.

///

///

# PRAYER

WHEREFORE, Plaintiff requests judgment in his favor and against Defendants as follows:

1. For Plaintiff's First Claim for Relief, actual damages and liquidated damages for failure to pay minimum wage under FLSA in an estimated amount of $4,710.40, 29 U.S.C. § 216(b);

2. For Plaintiff's Second Claim for Relief, actual damages and liquidated damages for failure to pay overtime under FLSA in an estimated amount of $25,625.88, 29 U.S.C. § 217(b);

3. For Plaintiff's Third Claim for Relief, actual damages for failure to pay minimum wage under Oregon law in an estimated amount of $25,061.50, plus penalty wages of $3,600, pursuant to O.R.S. § 653.055;

4. For Plaintiff's Fourth Claim for Relief, actual damages for failure to pay overtime under Oregon law in an estimated amount of $23,594.80, pursuant to O.R.S. § 653.261,

5. For Plaintiff's Fifth Claim for relief, unpaid contract wages in the amount of $73,969.50;

6. For Plaintiff's Sixth Claim for relief, penalty wages in the amount of $3,600.00, for failure to pay wages upon termination under O.R.S. §§ 652.140 and 652.150;

7. Reasonable attorney fees and costs, pursuant to 29 U.S.C. § 216(b) and O.R.S. §§ 653.055 and 652.200(2); and

8. Such further or alternative relief in his favor as the court deems appropriate.

///

DATED: September 27, 2021

/s/ Kelsey Heilman

Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
David Henretty, OSB No. 031870
dhenretty@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR 97204
(503) 473-8324

Attorneys for Plaintiffs